Patrick R. Day, P.C. (Wyo. Bar No. 5-2246)
Beau B. Bump (Wyo. Bar No. 7-5014)
Holland & Hart LLP
2515 Warren Avenue, Suite 450
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
Facsimile: (307) 778-8175
PDay@hollandhart.com
BBBump@hollandhart.com

ATTORNEYS FOR PLAINTIFF

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 OCT 29 PM 4 50

STEPHAN HARRIS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SINCLAIR WYOMING REFINING COMPANY, a Wyoming corporation, <br><br> Plaintiff, <br><br> v. <br><br> INFRASSURE LTD, a Swiss corporation, <br><br> Defendant. | Civil Action No. 15CV194 <br><br> JURY DEMAND |

## PLAINTIFF'S COMPLAINT

Plaintiff Sinclair Wyoming Refining Company, by undersigned counsel, for its Complaint against Defendant Infrassure Ltd. states as follows:

### I.
### NATURE OF THE ACTION

1. This is a first party insurance action seeking breach of contract and punitive damages for insurer bad faith in connection with covered business interruption losses exceeding $4.5 million. Defendant is one of eighteen insurers on Plaintiff's quota share commercial property insurance program, and is the only insurer that has refused to pay its several (7.5%) share of Plaintiff's business interruption and extra expense losses resulting from a

4847-0708-8170.v3

September 27, 2013 fire and explosion in a hydrotreater unit at Plaintiff's petroleum refinery located in this District, in Sinclair, Wyoming. Since September 9, 2014, Plaintiff has tendered three separate sworn proofs of loss for $60 million, representing the agreed-upon claim after adjustment. The other 92.5% of the market promptly paid their shares upon presentment of the agreed proofs of loss. Defendant has provided no explanation for its recalcitrance—it has not aligned itself with the market; it has not adjusted the claim independently; and, while on July 1, 2015 in a purported response to the June 19, 2015 (third) proof of loss, Defendant—for the first time—indicated it would need until mid-August 2015 to respond, it has provided no further response whatsoever. By failing to pay Plaintiff's loss, either in partial installments or in total, Defendant breached its insurance contract with Plaintiff and has repudiated the final proof of loss submitted by Plaintiff. Defendant also acted in bad faith by continuing to delay payment and refusing to adjust, or alternatively, aligning itself with other market members. For this reason, Plaintiff is entitled to not only the amount owed on Plaintiff's claim, but also punitive damages as a result of Defendant's breach of the duty of good faith and fair dealing in response to Plaintiff's rightful claim for payment.

## II.
### PARTIES, JURISDICTION AND VENUE

2.  Sinclair Wyoming Refining Company ("Sinclair") is a corporation organized under the laws of Wyoming, with its principle place of business in Wyoming. At all relevant times, Sinclair was authorized to do business in Wyoming.

3.  Upon information and belief, Infrassure Ltd. ("Infrassure") is an insurance entity organized under the laws of Switzerland and maintaining its principal place of business in Zurich, Switzerland.

4. Upon information and belief, Defendant is experiencing financial difficulties, and as of July 2014, ceased writing new commercial property insurance.

5. Plaintiff seeks $4.5 million in business income and expense losses in addition to consequential and punitive damages arising from Defendant's breach of contract and bad faith refusal to pay.

6. This Court has diversity of citizenship jurisdiction over this action under 28 U.S.C. § 1332(a)(1), as Plaintiff and Defendant are: (1) a citizen of a state and (2) a citizen of a foreign state, respectively, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant in this District as the contract contains a "Service of Suit" clause contractually obligating Defendant to submit "at the request of the Insured" to "the jurisdiction of a court of competent jurisdiction within the United States of America." The provision reads as follows:

> 55. SERVICE OF SUIT
>
> It is agreed that in the event of the failure of the Underwriters severally subscribing to this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Slip, Endorsement #1, at 32. Attached hereto as Exhibit A.

8. This Court is an appropriate venue for this action under 28 U.S.C. § 1391(b)(2) because the losses giving rise to the claim were sustained principally at Plaintiff's refinery in Sinclair, Wyoming.

## III.
## Background Facts

9. Plaintiff owns and operates the Sinclair Refinery located in Sinclair, Wyoming. The Sinclair Refinery is one of the largest high conversion refineries in the Rocky Mountain region, and processes a diverse crude slate, including heavy sour Canadian crude and indigenous Utah Waxy crude. The plant processes crude at a rate of 80,000 barrels per day.

10. On or about September 27, 2013, Plaintiff's Sinclair Refinery was operating at or near capacity when it suffered an explosion and fire originating near a heater located within the "#4 HDS Unit."

11. As a result of the explosion and fire at the Sinclair Refinery, Plaintiff suffered over $50 million worth of property damage and over $100 million in business income and expense losses. Only insurance for the latter is at issue in this dispute.

**A.  The Slip**

12. Plaintiff submitted a claim for its loss to the insurers severally subscribing to the property insurance policy issued to and paid for by Sinclair (the "Sinclair Property Insurance Program"). Plaintiff is a named insured under the Sinclair Property Insurance Program. The program was subscribed to by Defendant and seventeen other insurers on a quota share basis for the policy period that incepted January 1, 2013 and remained in effect until January 1, 2014.

13. Defendant agreed to assume a 7.5% share of the $250,000,000 million limits of the policy pursuant to a policy slip, Contract No. EI169013(1) (the "Slip") issued by Defendant and binding Defendant to pay 7.5% of loss insured thereunder. Exhibit A.

14. A "signing slip" is a document that is created by a Lloyd's broker after a quotation has been accepted for the purpose of processing premiums under the contract that is evidenced by the placing slip. As is the case with the Slip issued to Sinclair, the document

shows underwriters' stamps, signed lines and underwriting references, these details being inserted by each underwriter at the request of the broker. Provided that it shows the underwriters' stamps, signed lines and underwriting references, a signed slip is an insurance policy or contract.

15. The Slip forms the basis for the insurance coverage contract between Plaintiff and Defendant.

16. The Slip was in effect at the time of the explosion and fire.

17. The Slip is a form of "all-risk" insurance providing coverage as follows:

ALL RISK OF DIRECT PHYSICAL LOSS OR DAMAGE,
including but not limited to Flood, Earth Movement, Boiler and
Machinery perils (accident to an object) and/or as defined herein.

Slip at 2.

18. The Slip insures losses resulting from business interruption and extra expense as follows:

    C.    <u>Business Interruption</u>

        (1)    Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 9.A.

        \*    \*    \*

    D.    <u>Extra Expense</u>

        (1)    Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 9.A.

Slip, Endorsement 1 at 6.

19. The Slip provides for loss payable as follows:

    7.    LOSS PAYABLE

4847-0708-8170.v3

> Loss, if any, shall be adjusted with and payable to the First Named Insured or order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

Slip, Endorsement 1 at 5.

20. The Slip contains a Partial Payment of Loss provision requiring Defendant to make partial payment for undisputed loss amounts:

> 32. PARTIAL PAYMENT OF LOSS
>
> In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company in excess of the applicable policy deductible. To obtain partial payment(s) the Insured will submit a signed Proof of Loss as described in the policy.

Slip, Endorsement 1 at 26.

21. The Slip provides for payment of loss as follows:

> 38. PAYMENT OF LOSS
>
> All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

Slip, Endorsement 1 at 27.

22. As is common in the London Market, the Slip designates an adjuster for the "adjustment of all claims made against this policy," here Mr. Dan McLain of McLain Crow & Associates or Integra. Slip, Endorsement 1 at 26.

23. Upon information and belief, the coverage terms and conditions provided by the Slip are equivalent to those set forth in the policies issued by the other seventeen insurers on Plaintiff's property insurance program.

24. None of the insurers, including Defendant, have asserted that any exclusions apply to preclude coverage for Plaintiff's loss.

6

**B.   Claim Adjustment**

25.   As prescribed by contract, the subscribing insurers on the Sinclair Property Insurance Program relied upon the designated outside adjuster to adjust Plaintiff's claim.

26.   Upon information and belief, Defendant received all of the claim and adjustment information and materials provided by Mr. McLain during the course of the adjustment of the claim.

27.   Upon information and belief, Defendant did not engage any other adjustor to adjust Plaintiff's claim.

28.   Plaintiff presented its insurers, including Defendant, with a claim for loss of business income and the incurrence of extra expense in an amount exceeding $100 million.

29.   Following months of protracted negotiations with the subscribing insurers on the Sinclair Property Insurance Program, the parties reached agreement on the total losses, and Plaintiff submitted three sworn proofs of loss, totaling $60 million, for prompt payment.

30.   The first proof of loss was submitted September 9, 2014 in the amount of $20 million (the "$20M Proof of Loss"). Attached hereto as Exhibit B.

31.   The second proof of loss was submitted January 21, 2015 in the amount of $4 million (the "$4M Proof of Loss"). Attached hereto as Exhibit C

32.   The third proof of loss was submitted June 19, 2015 in the amount of $36 million (the "$36M Proof of Loss"). Attached hereto as Exhibit D.

33.   These proofs of loss represented a compromise; namely an agreed as-adjusted covered loss figure arrived at through months of face-to-face negotiations involving Sinclair's broker and in consultation with Sinclair on the one hand and, the subscribing insurers on the Sinclair Property Insurance Program, on the other hand.

34. Except as set forth below in Paragraphs 79 and 80, defendant did not reject or otherwise respond to any of Plaintiff's proofs of loss and distanced itself from the negotiations, all while reaping the benefits of a shared adjustment process, including the receipt of Plaintiff's detailed claim submissions and the professional services of the outside adjuster hired by the market.

35. All seventeen of the other insurers timely paid their quota share percentage of the agreed loss amount pursuant to the proofs of loss submitted by Plaintiff.

36. Defendant has failed to pay its share of Plaintiff's loss, or to provide a legal basis for this failure. It has failed to state a coverage position, or to disavow the coverage position, i.e., the agreement that the loss is covered, taken by the lead insurer or the other subscribers to the Sinclair Property Insurance Program. Nor has Defendant proposed any payment arrangement for Plaintiff's loss, despite having nearly a year to do so.

37. During the adjustment of the claim, Defendant did not assert any coverage defenses to Plaintiff's claim or respond in any way to the claim and proofs of loss.

38. As a result of Defendant's failure to act in accordance with insurance law requirements and/or to pay the undisputed sums that are owed, Plaintiff brings this action to pursue and collect its claim.

## IV.
### Count I: Breach of Contract (First Proof of Loss)

39. Plaintiff incorporates the allegations of the above paragraphs as if fully set forth herein.

40. As set forth above, in return for premiums, Defendant sold Plaintiff an insurance policy, along with seventeen other insurers, in which Defendant promised to indemnify Plaintiff for all loss up to the applicable limits of liability.

4847-0708-8170.v3

41. Plaintiff suffered a covered loss.

42. Plaintiff timely and properly submitted claims under the Slip.

43. Defendant had a duty to adjust Plaintiff's loss pursuant to the Slip.

44. The Slip required Defendant to make partial payment of loss upon submission of a signed proof of loss by Plaintiff.

45. The Slip required that Defendant make payment of loss no later than 30 days after "presentation and acceptance of proofs of loss."

46. Plaintiff submitted the first proof of loss on September 9, 2014 in the amount of $20 million (the "$20M Proof of Loss").

47. By failing, among other things, to make payment of the loss or otherwise respond to the $20M Proof of Loss, Defendant "accepted" and/or is otherwise estopped from denying or otherwise rejecting the proof of loss pursuant to the terms of the Slip.

48. Through its actions and omissions, including its failure to independently adjust Plaintiff's claim, to align itself with the market, to accept or reject Plaintiff's $20M Proof of Loss in a timely manner, or to make any payments of Plaintiff's loss, Defendant has breached its contractual obligations to Plaintiff under the Slip.

49. As a result of the breach, Plaintiff was deprived of substantial benefits under the Slip for which it has paid premiums, causing Plaintiff to suffer significant damages in an amount to be proven at trial.

50. Defendant's breach was the proximate cause of Plaintiff's direct and foreseeable loss, liability, damages, expenses and costs.

51. Having breached its contractual obligations, and having failed to participate in the claims adjustment process, Defendant has waived any and all conditions to coverage, and may

not avail itself of any agreements reached in the prior adjustment process or any procedural rights of appraisal otherwise provided by the Slip.

52. Plaintiff is also entitled to recover its actual damages as well as incidental and consequential damages resulting from Defendant's breach, including its attorneys' fees and costs incurred in enforcing the insuring agreement.

53. All conditions precedent to Plaintiff's right to coverage have been satisfied and/or waived to the extent required by law.

54. No applicable exclusions or limitations purport to bar coverage for any of Plaintiff's claims.

## V.
## Count II: Breach of Contract (Second Proof of Loss)

55. Plaintiff incorporates the allegations of the above paragraphs as if fully set forth herein.

56. As set forth above, in return for premiums, Defendant sold Plaintiff an insurance policy, along with seventeen other insurers, in which Defendant promised to indemnify Plaintiff for all loss up to the applicable limits of liability.

57. Plaintiff suffered a covered loss.

58. Plaintiff timely and properly submitted claims under the Slip.

59. Defendant had a duty to adjust Plaintiff's loss pursuant to the Slip.

60. The Slip required Defendant to make partial payment of loss upon submission of a signed proof of loss by Plaintiff.

61. The Slip required that Defendant make payment of loss no later than 30 days after "presentation and acceptance of proofs of loss."

62. Plaintiff submitted the second proof of loss on January 21, 2015 in the amount of $4 million (the "$4M Proof of Loss").

63. By failing, among other things, to make payment of the loss or otherwise respond to the $4M Proof of Loss, Defendant "accepted" and/or is otherwise estopped from denying or otherwise rejecting the proof of loss pursuant to the terms of the Slip.

64. Through its actions and omissions, including its failure to independently adjust Plaintiff's claim, to align itself with the market, to accept or reject Plaintiff's $4M Proof of Loss in a timely manner, or to make any payments of Plaintiff's loss, Defendant has breached its contractual obligations to Plaintiff under the Slip.

65. As a result of the breach, Plaintiff was deprived of substantial benefits under the Slip for which it has paid premiums, causing Plaintiff to suffer significant damages in an amount to be proven at trial.

66. Defendant's breach was the proximate cause of Plaintiff's direct and foreseeable loss, liability, damages, expenses and costs.

67. Having breached its contractual obligations, and having failed to participate in the claims adjustment process, Defendant has waived any and all conditions to coverage, and may not avail itself of any agreements reached in the prior adjustment process or any procedural rights of appraisal otherwise provided by the Slip.

68. Plaintiff is also entitled to recover its actual damages as well as incidental and consequential damages resulting from Defendant's breach, including its attorneys' fees and costs incurred in enforcing the insuring agreement.

69. All conditions precedent to Plaintiff's right to coverage have been satisfied and/or waived to the extent required by law.

70. No applicable exclusions or limitations purport to bar coverage for any of Plaintiff's claims.

## VI.
## Count III: Anticipatory Repudiation (Third Proof of Loss)

71. Plaintiff incorporates the allegations of the above paragraphs as if fully set forth herein.

72. As set forth above, in return for premiums, Defendant sold Plaintiff an insurance policy, along with seventeen other insurers, in which Defendant promised to indemnify Plaintiff for all loss up to the applicable limits of liability.

73. Plaintiff suffered a covered loss.

74. Plaintiff timely and properly submitted claims under the Slip.

75. Defendant had a duty to adjust Plaintiff's loss pursuant to the Slip.

76. The Slip required Defendant to make partial payment of loss upon submission of a signed proof of loss by Plaintiff.

77. The Slip required that Defendant make payment of loss no later than 30 days after "presentation and acceptance of proofs of loss."

78. Plaintiff submitted the third proof of loss on June 19, 2015 in the amount of $36 million (the "$36M Proof of Loss").

79. On information and belief, on July 1, 2015 Defendant made its first response of any kind to Plaintiff's agent regarding any of the verified proofs of loss, indicating in response to the $36M Proof of Loss that Defendant was not yet in a position to comment on the $36M Proof of Loss.

80. Furthermore, on July 1, 2015, Defendant proposed to Plaintiff's agent a mid-August 2015 review date (*e.g.*, the date by which Defendant would be able to respond to the $36M Proof of Loss).

81. Mid-August came and went, and Plaintiff still heard nothing from Defendant regarding the $36M Proof of Loss. To date, Defendant still has not provided any communication to Plaintiff regarding the losses since July 1, 2015.

82. By failing to make partial payments pursuant to the $20M and $4M Proofs of Loss as required by the Slip, failing to separately adjust Plaintiff's claim in a reasonable time, and failing to respond to the $36M Proof of Loss within the timeframe it voluntarily set, Defendant has anticipatorily repudiated its obligations under the Slip, making clear that it has no intention of covering Plaintiff's losses.

83. As a result of Defendant's anticipatory repudiation, Plaintiff was deprived of substantial benefits under the Slip for which it has paid premiums, causing Plaintiff to suffer significant damages in an amount to be proven at trial.

84. Defendant's anticipatory repudiation was the proximate cause of Plaintiff's direct and foreseeable loss, liability, damages, expenses and costs.

85. Having breached its contractual obligations, and having failed to participate in the claims adjustment process, Defendant has waived any and all conditions to coverage, and may not avail itself of any agreements reached in the prior adjustment process or any procedural rights of appraisal otherwise provided by the Slip.

86. Plaintiff is also entitled to recover its actual damages as well as incidental and consequential damages resulting from Defendant's anticipatory repudiation, including its attorneys' fees and costs incurred in enforcing the insuring agreement.

87. All conditions precedent to Plaintiff's right to coverage have been satisfied and/or waived to the extent required by law.

88. No applicable exclusions or limitations purport to bar coverage for any of Plaintiff's claims.

## VII.
## Count IV: First-Party Insurance Bad Faith

89. Plaintiff incorporates the allegations of the above paragraphs as if fully set forth herein.

90. Defendant, as a first-party commercial property insurer, is under a duty to act reasonably with respect to Plaintiff, its insured, and to pay Plaintiff's undisputed losses covered under the Slip.

91. Defendant breached this duty by sitting on its hands and refusing to participate in the adjustment of Plaintiff's claim or to respond to the demand for payment of its portion of Plaintiff's loss pursuant to the sworn proofs of loss submitted by Plaintiff.

92. Defendant's failure to even attempt to set forth any reason for its failure to pay, or to make any effort to participate in the adjustment of Plaintiff's claim during the nearly two years since the explosion and fire occurred demonstrates Defendant's knowledge of, or reckless disregard for, its lack of a reasonable basis for refusing to pay Plaintiff's claim.

93. Defendant's willingness to withhold payment despite the fact that all seventeen of the other participants in the Sinclair Property Insurance Program have paid their several shares of Plaintiff's indisputably covered loss further demonstrates Defendant's willful or wanton disregard for the interest of its insured.

94. Plaintiff is entitled to recover its actual damages as well as incidental and consequential damages resulting from Defendant's bad faith conduct, such as Plaintiff's attorneys' fees and costs.

95. Plaintiff is also entitled to recover punitive damages as a result of Defendant's willful or wanton conduct.

## VIII.
## Count V: Declaratory Relief

96. Plaintiff incorporates the allegations of the above paragraphs as if fully set forth herein.

97. The Slip provides the following:

> Unless contained herein to the contrary, in the event of a dispute between the Insured and Insurers, this contract shall be governed by and construed in accordance with the Law of New York . . . .

98. The Slip also provides:

> This Policy shall be construed and interpreted under the laws of the State of New York. The insured may elect the applicable State Law in the event of a dispute.

99. Plaintiff contends that the instant action is a "dispute" under the terms of the Slip and consequently Plaintiff "may elect the applicable State Law." Plaintiff elects Wyoming law as the applicable State Law concerning Plaintiff's claims of breach, anticipatory repudiation, and bad faith against Defendant.

100. Defendant contends that New York law applies to its obligations under the Slip. Defendant specifically contends that under 11 N.Y.C.R.R. § 216.6(c),

> If the insurer needs more time to determine whether the claim should be accepted or rejected, it shall so notify the claimant, or the claimant's authorized representative, within 15 business days after receipt of such proof of loss, or requested information. Such notification shall include the reasons additional time is needed for investigation. If the claim remains unsettled, unless the matter is

4847-0708-8170.v3

in litigation or arbitration, the insurer shall, 90 days from the date of the initial letter setting forth the need for further time to investigate, and every 90 days thereafter, send to the claimant, or the claimant's authorized representative, a letter setting forth the reasons additional time is needed for investigation.

101. Plaintiff is informed and believes, and on that basis alleges, that Defendant also contends it has additional time to investigate Plaintiff's claim and make a determination regarding coverage under 11 N.Y.C.R.R. § 216.6(c).

102. However, even if 11 N.Y.C.R.R. § 216.6(c) applies here, the time to state a coverage position has passed. On information and belief, Defendant first requested additional time to investigate on June 22, 2015. Even assuming that 11 N.Y.C.R.R. 216.6(c) applies, the 90 day time period ran on September 20, 2015. Defendant is in violation of the regulation by failing to state a coverage position and pay pursuant to the terms of the Slip.

103. Furthermore, even if, as Defendant claims, it provided a response on July 1, 2015, the 90-day period under 11 N.Y.C.R.R. 216.6(c) expired on September 29, 2015. That date came and went with no response from Defendant. Defendant is estopped from now seeking even more time for a response.

104. Moreover, Defendant made no request for additional time regarding the $20M Proof of Loss or the $4M Proof of Loss, so 11 N.Y.C.R.R. § 216.6(c) has no application to Plaintiff's claims for breach of contract.

105. An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Slip, including (i) the applicable State Law and (ii) whether Defendant has a present duty to pay.

106. The controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment. The issuance of declaratory relief and subsequent compliance by

Defendant should be sufficient to resolve the existing controversy between Plaintiff and Defendant in this cause of action.

107. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment construing the application of New York and Wyoming law to the Slip, and whether Defendant has an immediate obligation to pay.

## IX.
## Conclusion and Prayer

Plaintiff respectfully prays that upon trial of this cause the Court enter judgment awarding it:

a. All actual damages suffered by Plaintiff as a result of Defendant's breaches of contract in an amount to be determined at trial;

b. Attorney's fees and costs pursuant to W.S.1977 § 26-15-124;

c. All compensatory and consequential damages suffered by Plaintiff as a result of Defendant's bad faith conduct;

d. Punitive damages;

e. Interim financial assurance by Infrassure to be deposited with the court securing Defendant's several (7.5%) share of Plaintiff's loss;

f. Pre- and post-judgment interest at the highest rate allowed by law;

g. Declaratory relief that:

   1. Wyoming law is the operative State Law concerning Plaintiff's claims of breach, anticipatory repudiation, and bad faith; and

   2. Defendant has a present duty to pay Plaintiff Defendant's several (7.5%) share of Plaintiff's loss; and

h. Such other further relief to which it may be justly entitled.

## X.
## Jury Demand

Plaintiff demands a trial by jury on all counts that are so triable.

Dated October 29, 2015.

_____
Patrick R. Day, P.C. (Wyo. Bar No. 5-2246)
Beau B. Bump (Wyo. Bar No. 7-5014)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
Facsimile: (307) 778-8175
PDay@hollandhart.com
BBBump@hollandhart.com

Of Counsel:
Peter M. Gillon
Geoffrey G. Greeves
Vernon C. Thompson, Jr.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036-3006
Tel.: (202) 663-8000
Fax: (202) 663-8007
peter.gillon@pillsburylaw.com
geoffrey.greeves@pillsburylaw.com
vernon.thompson@pillsburylaw.com

Colin T. Kemp
G. Allen Brandt
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Tel.: (415) 983-1270
Fax: (415) 983-1200

*pro hac vice motions to be filed*

ATTORNEYS FOR PLAINTIFF
SINCLAIR WYOMING REFINING
COMPANY

4847-0708-8170.v3