

FILED

11:23 am, 3/9/17

U.S. Magistrate Judge

# United States District Court

## For The District of Wyoming

SINCLAIR WYOMING REFINING
COMPANY, a Wyoming corporation,

Plaintiff,

vs.

INFRASSURE LTD,

Defendant.

Civil No. 15-CV-194-F

## ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF JIM SCHRATZ [DOC. 102] AND DENYING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF STEVEN COUSINS AND PAUL MOOTE [DOC. 103]

This matter is before the Court on Defendant Infrassure's Motion to Exclude the Testimony of Jim Schratz [Doc. 102] and Defendant Infrassure's Motion to Exclude the Testimony of Steven Cousins and Paul Moote [Doc. 103]. The Court having carefully considered the Motions and Responses, FINDS:

### BACKGROUND

This case stems from a September 27, 2013, explosion and fire at the Sinclair Refinery in Sinclair, Wyoming. As a result of the explosion and fire, Sinclair alleges it suffered over $50 million in property damage and $100 million in business income and expense losses. Infrassure provided property insurance to Sinclair through a policy covering a 7.5% share of Sinclair's potential losses through the "Sinclair Property Insurance Program" (SLIP). After the accident, and months of negotiations with all of the insurers, Sinclair

submitted three sworn proofs of loss, totaling $60 million. Sinclair asserts the proofs of loss represented a compromise adjusted covered loss figure arrived at through negotiations involving Sinclair, its broker, and the subscribing insurers on the SLIP.

Sinclair seeks $4.5 million in business income and expense losses it claims are covered by the Infrassure policy, as well as consequential and punitive damages. In the two Motions before the Court, Infrassure argues that three of Sinclair's experts should be stricken because their opinions are unreliable under *Daubert* or do not comply with Federal Rule of Civil Procedure 26.

## MOTION TO STRIKE JIM SCHRATZ

Infrassure makes two primary arguments for why Mr. Schratz should be disqualified as an expert under *Daubert*. First, Infrassure argues Mr. Schratz is not qualified to offer expert opinions on the handling of technical business interruptions claims. Infrassure contends that Mr. Schratz's experience in the insurance industry is centered on claims such as homeowner and auto policies, and that he is unqualified to opine on a complex business interruption claim. Infrassure also argues that even if Mr. Schratz could qualify as a business interruption expert, he lacks the technical expertise necessary to understand whether the refinery repair process was reasonable and, as a result, whether the claim was adjusted fairly. Additionally, Infrassure points to Mr. Schratz's acknowledgement of a lack of expertise on subrogation rights and Swiss insurance regulations as further examples of why Mr. Schratz is unqualified.

Next, Infrassure argues Mr. Schratz is not qualified to testify as an expert because he has not developed his analysis through any reliable methodology. Infrassure claims Mr. Schratz based his expert opinions in large part on a single affidavit and review of one claims

file.   Infrassure argues such a cursory investigation is insufficient to support finding Sinclair's other insurers met the requisite standard of care. Similarly, Infrassure claims Mr. Schratz's research into the effect of Swiss insurance regulations on Sinclair's claim was inadequate because neither Mr. Schratz nor his assistant could read German or French. Finally, Infrassure argues that even if Mr. Schratz is qualified to testify, offering an opinion about whether Infrassure's claims handling ultimately constituted bad faith improperly impinges on the jury's role as trier of fact.

### RESPONSE TO THE MOTION TO STRIKE JIM SCHRATZ

In Response, Sinclair argues Defendant's Motion misconstrues the nature Mr. Schratz's expert opinions. Plaintiff emphasizes the crux of Mr. Schratz's opinion is that Infrassure did not comply with standard industry procedure when adjusting Sinclair's claim. As a result, Sinclair argues Infrassure's focus on limited elements of that opinion is misplaced. Similarly, Sinclair argues that while Mr. Schratz did rely on a review of one insurers claim file, he also "compared Infrassure's actions to its own claims manuals and the Unfair Claims Settlement Practices Act in Wyoming, as well as several other sources of industry claims-handling standards." ECF No. 115 at 8. These sources parallel Defendant Infrassure's own bad faith expert, who also "compared Infrassure's actions to its own claims manual and the Unfair Claims Settlement Practices statutes in Wyoming and New York." *Id.* Finally, Sinclair argues that courts routinely allow experts to testify on whether a claim was handled in bad faith, and an expert opinion on the issue does not usurp the role of the jury.

### MOTION TO STRIKE STEVEN COUSINS AND PAUL MOOTE

In the second Motion, Infrassure argues both Steven Cousins and Paul Moote are unqualified to provide expert opinions or, in the alternative, that they will testify about the

same issues, in violation of U.S.D.C.L.R. 26.1. Infrassure contends that Mr. Cousins is not qualified to offer an opinion on the effect cold weather had on Sinclair's refinery repairs because Mr. Cousins is not "an expert in weather forecasting or allocation of workers in cold weather." ECF No. 103 at 3. Infrassure also argues Mr. Cousins' report should be stricken because he destroyed interview notes in violation of Federal Rule 26(a)(2)(B)(ii). Next, Infrassure argues Mr. Moote's expert opinions should be stricken because he has failed to provide a sufficient summary of the facts and opinions he will testify to at trial. Finally, Infrassure argues that if both experts are qualified, only one should be allowed to testify at trial, because they are offering duplicative opinions, in violation of local rule 26.1(e)(1).

### RESPONSE TO THE MOTION TO STRIKE STEVEN COUSINS AND PAUL MOOTE

In Response, Sinclair first argues Mr. Cousins is generally qualified as an expert on refinery repairs because he supervised numerous repair projects during his 38 years in engineering and management positions at other oil companies. Next, Sinclair argues that while Rule 26(a)(2)(B)(ii) requires an identification of all facts and data considered, it does not require the retention of informal notes. Turning to Defendants attempt to strike Mr. Moote, Plaintiff argues Mr. Moote is a non-retained expert under Federal Rule of Civil Procedure 26(a)(2)(C) and has satisfied all relevant disclosure requirements. Finally, Sinclair contends that although Mr. Cousins' and Mr. Moote's expert reports do contain some overlap, there is a sufficient distinction between the actual project manager and a general refinery repair expert to allow both to testify.

### RELEVANT LAW

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997).  In

utilizing this discretion, the Court will first look to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Wyoming regarding expert witness designations. Pursuant to the federal and local rules, opposing parties are entitled to a detailed disclosure of the information that adversarial experts are relying upon in formulating their expert opinions. Fed. R. Civ. P. 26(a)(2); U.S.D.C.L.R. 26.1(e); *Smith v. Ford Motor Co.*, 626 F.2d 784, 795-96 (10th Cir. 1980).

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, (1999). Rule 702 of the Federal Rules of Evidence requires:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Each expert's opinions are subject to the same standards of reliability that govern the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho Tire Co., Ltd.*, 526 U.S. at 151 (holding *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 applies even when an expert's opinion relies on skill or experience-based observation). Rule 702 and *Daubert* require courts act as gatekeepers by ensuring all expert testimony, whether scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Kumho Tire Co., Ltd.*, 526 U.S. at 152-53. In order to make the requisite findings the court must first determine whether the expert is qualified by knowledge, skill,

experience, training, or education to render an opinion.  Second, the court must determine whether the expert's opinions are sufficiently reliable. Fed. R. Evid. 702; *Kumho Tire Co.*, 526 U.S. at 152-53; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Finally, the court must determine whether the proposed expert testimony will assist the trier of fact.  Fed. R. Evid. 702.

In order to offer expert testimony, an expert's qualifications may be based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. It is not paramount that witnesses satisfy all of these qualifications to testify as an expert because a witness is qualified to testify as an expert so long as the witness' overall qualifications provide expertise relevant to the opinions offered. *Id*. (Advisory Committee Notes, 2000 Amendments); *U.S. v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *U.S. v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983)). As a result, Rule 702 is to be liberally construed in that it "does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires v. Goodwin,* 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (citing *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995)). In short, a person is qualified to offer expert testimony so long as they possess such skill, experience or knowledge so that the opinion rests on a substantial foundation that will aid the trier of fact. *Id*. (citing *LifeWise Master Funding v. Telebank*, 374 F.3d. 917, 928 (10th Cir. 2004)).

## RULING OF THE COURT

As Infrassure has challenged three different experts, and raised numerous issues with regard to each, the Court will address each objection to Sinclair's experts individually.

*Mr. Schratz's Qualifications*

Infrassure has argued that Mr. Schratz is unqualified to offer an opinion on whether Sinclair's claim was handled in good faith because Mr. Schratz has not previously adjusted complex business interruption claims and lacks the specialized knowledge necessary to evaluate a complex refinery repair project. Sinclair has, however, attempted to characterize Mr. Schratz as offering testimony about "how insurance companies are supposed to adjust claims," generally. EFC No. 115 at 4. Courts in the Tenth Circuit have repeatedly addressed whether an generalized expert on insurance can offer opinions on whether a specific type of claim the expert has less experience with was adjusted in bad faith. *See e.g. City of Hobbs v. Hartford Fire Ins. Co.,* 162 F.3d 576, 587 (10th Cir. 1998); *Bright v. Ohio Nat. Life Assur. Corp.,* No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *2 (N.D. Okla. Jan. 9, 2013); *Wittmer v. Am. Med. & Life Ins. Co.,* No. 11-CV-126-F, 2011 WL 10743827, at *1 (D. Wyo. Nov. 15, 2011). Courts addressing how specific an expert's qualifications or experience must be have recognized that the determination "depends heavily on the characterization of the issue being discussed." *Bright,* 2013 WL 121479, at *2.

The Tenth Circuit has repeatedly found that experts with extensive experience in and knowledge of the insurance industry, generally, are qualified to offer opinions on whether specific claims they have less experience with were handled in bad faith. *See Wittmer,* 2011 WL 10743827 at *2. In fact, the two cases that Infrassure cites to argue Mr. Schratz should be excluded both found that experts on claims handling were qualified to testify about types of claims they were unfamiliar with. *City of Hobbs,* 162 F.3d at 587; *Bright,* 2013 WL 121479 at *2. In *Hobbs,* the Tenth Circuit found the district court did not abuse its discretion when it found an insurance adjustment expert was qualified to testify on whether a claim was

7

handled in good faith, despite the fact the expert was unfamiliar with the New Mexico bad faith law.[1] 162 F.3d at 587. Similarly, the court in *Bright* found

> [the expert's] experience and education is sufficient to qualify as an expert in insurance claim handling. [The expert's] lack of experience with disability insurance could be explored during cross-examination to attack his credibility if [the expert] were allowed to testify. [The expert's] inexperience also affects the reliability of his methodologies, as discussed below. But he is not disqualified from testifying based on his applicable experience.

2013 WL 121479, at *2. Under this approach, Sinclair's argument that Mr. Schratz is unqualified because he lacks business interruption expertise is inapposite. Mr. Schratz's alleged unfamiliarity with the technical aspects of rebuilding a refinery and business interruption claims go to either the reliability of his methods or whether his proffered testimony will assist the jury. Mr. Schratz's lack of experience with business interruption claims does not, however, make him unqualified to opine on whether Infrassure handled Sinclair's claim in good faith.

### *The Reliability of Mr. Schratz's Methods*

Next, Infrassure claims Mr. Schratz based his expert opinions primarily on a single affidavit and review of one claims file, and that such a cursory investigation should not be considered reliable. For an insurance expert's opinions to be reliable, their report should "describe industry standards and then apply them to the facts at hand." *Bright*, 2013 WL 121479, at *3. In this case, Mr. Schratz's report spends four pages detailing the applicable standard of care. ECF No. 102-1 at 4-8. This section cites numerous sources, including insurance industry documents and relevant regulations. *Id.* Mr. Schratz's report then spends nine pages detailing how Infrassure handled Sinclair's claims and stating why those actions

---

[1] The Court did find, however, that because of the expert's limited experience with New Mexico law, the proffered testimony would not assist the trier of fact. 162 F.3d at 587.

violated both industry and regulatory standards. *Id.* at 9-16. This detailed analysis, based on a thorough review of the applicable standards and a careful application of those standards to the facts of this case is reliable. To the extent Infrassure believes Mr. Schratz was not sufficiently thorough in developing specific, discrete opinions that constitute a small part of his report, those deficiencies are best explored through cross-examination. *See* Fed. R. Civ. P. 702 Advisory Committee Notes, 2000 amendments ("[T]he trial courts role as gatekeeper is not intended to serve as a replacement for the adversary system.") (internal citations omitted).

*The Scope of Mr. Schratz's Testimony*

Finally, Infrassure argues Mr. Schratz's report improperly usurps the role of the jury by offering opinions on whether Infrassure acted in good faith. Generally, a witness in a civil case may testify about an opinion as to the ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704. However, "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." O*kland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). To operationalize the distinction between permissible testimony relating to ultimate issues, and impermissible legal conclusions, the Tenth Circuit has repeatedly, but not exclusively, considered two factors. First, courts have considered whether the expert's testimony encourages the trier of fact to "abdicate its function or responsibility for reaching an independent judgment on the ultimate issues in the case." *E.g. Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir.1987); *See also Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir. 1988). Second, courts have considered whether the expert's opinions will "assist the trier of fact in understanding the

evidence or in determining a factual issue." *Okland Oil Co. v. Conoco Inc*., 144 F.3d 1308, 1328 (10th Cir. 1998).

In applying this standard to experts who plan to testify about whether or not an insurance claim was handled in good faith, the Tenth Circuit has found that both allowing the expert's testimony and excluding it are permissible exercises of the trial court's discretion. *Compare Ford v. Allied Mut. Ins. Co.,* 72 F.3d 836, 841 (10th Cir. 1996) (allowing testimony as to the appropriate method of claims handling in an underinsured motorist case) *with City of Hobbs*, 162 F.3d at 587 (Excluding an expert's bad faith testimony on the grounds that it would not assist the jury). In this case, Mr. Schratz's testimony may assist the jury on a number of fronts, particularly in light of the fact that the average juror is unlikely to have experience with a multi-insurer loss coverage program. Mr. Schratz's expert opinion addresses complex issues such as Infrassure's duty to independently investigate Sinclair's claim and whether deviation from the market settlement agreement was appropriate.

In fact, Infrassure's assertion that a bad faith expert would not assist the jury is belied by the fact that Infrassure has designated an expert on the issue as well. Additionally, the fact that both Sinclair and Infrassure have designated experts on the issue makes it unlikely that either expert will provide the jury the opportunity to abdicate their responsibility for an independent judgement. The jury must ultimately choose which expert is correct. Accordingly, Infrassure's Motion to Strike Mr. Schratz is DENIED. To the extent Infrassure objects to specific and discrete portions of Mr. Schratz's opinions, either because they contain legal conclusions or are otherwise impermissible, Infrassure may bring those specific objections to the Court through a motion in limine. Mr. Schratz is, however, qualified under

Rule 702, and permitted by case law, to testify about whether Infrassure's handling of Sinclair's claim complied with applicable regulations and industry standards.

*Mr. Cousins' Qualifications*

Next, Infrassure has moved to exclude Mr. Cousins' opinion that cold weather slowed repairs of Sinclair's refinery. Again, the issue of whether Mr. Cousins is qualified to testify about the about the effects of cold weather on productivity "depends heavily on the characterization of the issue being discussed." *Bright*, 2013 WL 121479, at *2. If Mr. Cousins' opinions were focused primarily on how weather affects productivity, his qualifications might be inadequate. Mr. Cousins' opinions, however, are focused on whether Sinclair completed repairs on the refinery in a timely manner.

Mr. Cousins' report is fourteen pages long and approximately one page addresses cold weather, productivity and the temperatures at the time of the repair. Then only a single paragraph in approximately three pages of opinions touches on how the cold temperatures at the time of the repair slowed progress. Given these proportions, Mr. Cousins' testimony is properly characterized as addressing *all* the factors that should be considered in determining whether the repairs to the Sinclair refinery were completed in a timely fashion. Mr. Cousins is qualified to offer this proffered testimony as he has extensive experience, including a 38-year career as an engineer and executive in the oil industry. Additionally, Defendant Infrassure's position is again undermined by the fact that Infrassure's own expert on the refinery repair, who is a similarly qualified engineer, also opines on the effect cold weather would have had on the repair of the refinery. *See* ECF No. 116-1 at 4, 60.

11

*The Preservation of Mr. Cousins' Notes*

Infrassure also argues Mr. Cousins' report should be stricken because he did not retain notes from some of the interviews he conducted. In support of this position, Infrassure argues that disclosure of these notes is required by Rule 26(a)(2)(B)(ii). Implicitly, this request to strike is made under Federal Rule of Civil Procedure 37(c) because Rule 37(c) addresses failures to make mandatory disclosures. The fault with this line of argument, however, is that it is not obvious the shorthand notes taken by Mr. Cousins were discoverable. While neither party has cited the Court to any caselaw on whether shorthand notes of interviews with fact witnesses incorporated into a report would be independently discoverable, there is at least some uncertainty around the issue. *Compare Wenk v. O'Reilly,* No. 2:12-CV-474, 2014 WL 1121920 (S.D. Ohio Mar. 20, 2014) (finding informal notes were discoverable) *with D.G. ex rel. G. v. Henry,* No. 08-CV-74-GKF-FHM, 2011 WL 1344200 (N.D. Okla. Apr. 8, 2011) (finding informal notes were not discoverable). Even assuming, *arguendo,* that these notes were discoverable, striking Mr. Cousin's report is not appropriate.

"Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 952–53 (10th Cir. 2002). A district court has broad discretion when determining whether a Rule 26(a) violation is harmless. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999). The court should, however, consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad

faith or willfulness." *Jacobsen*, 287 F.3d at 953. In this case, these factors weigh in favor of finding Sinclair's omission of Mr. Cousins' notes is harmless.

First, there is little prejudice or surprise in allowing Mr. Cousins to testify. Infrassure has not made any allegations that Mr. Cousins' report contains any information derived from the interviews at issue that contradict Infrassure's own investigation. Additionally, Mr. Cousins testified at his deposition that there is no information he gained from these interviews not included in his report. As a result, all of the factual information Mr. Cousins collected appears to be included in his report, and there is little prejudice in allowing it.

There is also ample opportunity for Infrassure to overcome what little prejudice may result from the destruction of the notes by going back and interviewing the same individuals Mr. Cousins did. Finally, as these were rudimentary notes which Mr. Cousins admitted to making, there is no evidence he was deliberately trying to conceal information or acting in bad faith. In this case, the failure to preserve a limited set of shorthand notes is harmless. To the extent Infrassure believes discovery of the underlying conversations is truly necessary Infrassure may request information about who Mr. Cousins interviewed and request that Sinclair make them available. Defendant's Motion to Strike Mr. Cousins is DENIED.

### Mr. Moote's Expert Disclosure

Next, Infrassure argues Mr. Moote's expert report should be stricken because his designation does not satisfy Rule 26's expert disclosure requirement. As noted above, Sanctions for failures to comply with expert disclosure requirements are governed by Rule 37(c). A district court may refuse to strike expert reports that violate Rule 26(a) if the violation is harmless under the four factors outlined above. *Jacobsen*, 287 F.3d at 952–53. A

district court has broad discretion when determining whether a Rule 26(a) violation is harmless. *Woodworker's Supply, Inc.*, 170 F.3d at 993.

Rule 26 expert disclosures are required because each party should have an opportunity for "full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved." *Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980) (internal citations omitted). "Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon." *Id.* (internal citations omitted). In this case, Infrassure has already conducted an extensive deposition of Mr. Moote, where it had ample opportunity to develop Mr. Moote's opinions in order to successfully cross-examine him at trial. As a result, there is virtually no prejudice in allowing Mr. Moote to testify and the question of whether prejudice can be cured is moot. Additionally, there is no evidence of bad faith on Sinclair's part as Infrassure never raised the issue of Mr. Moote's disclosure with Sinclair. It would be impossible for Infrassure to claim Sinclair deliberately withheld information in bad faith since Sinclair was never given an opportunity to supplement their disclosure. This failure of communication also highlights the larger problem with Infrassure's Motion.

Rule 37 sanctions are not a tool meant to be leveraged for an advantage at trial. Instead, Rule 37 is primarily focused on preventing the genuine prejudice that might occur if undisclosed evidence were introduced. *See Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1557 (10th Cir. 1996) (Rule 37 sanctions "must be in the interests of justice and proportional to the specific violation of the rules."). Parties are, to some extent, entitled to rely on the deadlines imposed by the Court in order to facilitate a timely resolution of litigation.

However, attempting to exclude an expert based on an allegedly insufficient expert disclosure without any good faith conferral, or opportunity to remedy, runs counter to the "preference that litigation disputes be resolved on the merits." *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996). As a result, this Court has frequently allowed supplemental disclosure after expert designation deadlines. *E.g. Lundquist v. Whitted, No. 15-CV-148-NDF, 2016 WL 3674695, at *4 (D. Wyo. May 25, 2016)*. In this case, if Infrassure truly believed it needed additional information to effectively evaluate Mr. Moote's opinions, that should have been readily apparent when Infrassure received Mr. Moote's designation in early December or, at a minimum, once Infrassure began preparation for Mr. Moot's January 16, 2017 deposition. It would have been appropriate for Infrassure to raise the issue with Sinclair or the Court at that time. Infrassure, however, proceeded with their deposition and waited until the motions deadline, when Sinclair would have less opportunity to cure the defect, to raise the issue. Accordingly, Infrassure's Motion to Strike Mr. Moote is DENIED.

### Compliance with Local Rule 26.1

Finally, Infrassure has argued Sinclair should not be able to present both Mr. Moote and Mr. Cousins as experts at trial because U.S.D.C.L.R. 26.1(e)(1) bars the designation of multiple experts on the same topic. However, when there are complex issues of causation, the Court should allow multiple experts if the rationale behind each expert's opinion is sufficiently distinct that each will offer a different perspective to the trier of fact. *See Nalder v. W. Park Hosp.*, 254 F.3d 1168, 1175 (10th Cir. 2001). Mr. Cousins and Mr. Moote meet this criteria because Mr. Moote will be offering opinions primarily related to his day to day administration of Sinclair's refinery repairs, while Mr. Cousins will be offering a general

15

overview of whether Sinclair's repair timeline was reasonable compared to industry standards. As a result, Infrassure's Motion to Strike either Mr. Cousins or Mr. Moote because their opinions are duplicative under Local Rule 26.1 is DENIED.

NOW, THEREFORE, IT IS ORDERED Defendant's Motion to Exclude the Testimony of Jim Schratz [Doc. 102] be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED Defendant's Motion to Exclude the Testimony of Steven Cousins and Paul Moote [Doc. 103] be, and the same hereby is, DENIED.

Dated this 9th day of March, 2017.

_____
Kelly H. Rankin
U.S. Magistrate Judge